**Thomas Lee BRIGGS and Linda Kay Howell, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–90–00061–CR, 01–90–00755–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 28, 1991.

David M. Einsen, Houston, for appellants.

John B. Holmes, Jr., Harris Co. Dist. Atty., Rowena M. Young & Candice Mosley, Asst. Harris Co. Dist. Attys., for appellee.

Before SAM BASS, DUNN and HUGHES, JJ.

## OPINION

DUNN, Justice.

A jury found appellants, Thomas Lee Briggs and Linda Kay Howell, guilty of interference with child custody. The jury assessed punishment for Briggs, enhanced by one prior felony conviction, at two years confinement. The jury assessed punishment for Howell at two years confinement, which was probated.

Sammi Lee King testified that in May 1989, she was employed by the Harris County Children's Protective Services as an investigator and caseworker for neglected, abused, and abandoned children. On May 5, 1989, she received a complaint concerning a child, C.K.H. As a result of the complaint, King went to C.K.H.'s home and talked to her mother, Howell, and her stepfather, Briggs. Neither Howell nor Briggs knew where C.K.H. was.

King located C.K.H. on May 9, 1989, at school. King claimed she then contacted Howell who told King she did not want C.K.H. back in her home. King stated that she told Howell that Children's Protective Services would take temporary custody of C.K.H. at 9:15 the next morning at the Family Law Center. King then took C.K.H. to the Chimney Rock Shelter.

On May 10, 1989, a temporary order was entered in the 313th District Court appointing Children's Protective Services tempo-

rary managing conservator of C.K.H. King testified that although she told Howell about the hearing on custody, neither Howell nor Briggs attended.

King claimed that Howell called her after the order was entered. Howell was upset and told King that she wanted C.K.H. back. King told Howell that Children's Protective Services had temporary custody of C.K.H.

Jewel Teagle, a shift supervisor at the Chimney Rock Shelter, testified that on May 10, 1989, she spoke on the telephone to someone who identified herself as Howell. Howell told Teagle that she was coming to get her daughter. Teagle informed Howell that she could not pick up C.K.H. because C.K.H. was sent to the shelter by a court order and could not be taken out without another court order.

Teagle testified that she also spoke on the telephone to someone who identified himself as Briggs. Teagle told Briggs that C.K.H. was in the shelter under court order and could not be released unless a judge signed an order releasing her.

Rebecca Guiterrez, receptionist at the Chimney Rock Shelter, testified that Briggs and Howell entered the shelter on May 11, 1989, at 8:30 or 8:45 a.m. Marshall Hattix, caseworker coordinator at the Chimney Rock Shelter, called King to talk with Howell and Briggs. Briggs spoke to King from a telephone in the lobby of the shelter. King testified that when Briggs told her he wanted C.K.H. back, she told him Children's Protective Services had temporary custody of the child.

Hattix testified that while Briggs was on the telephone with King, Howell walked down a hallway into the restricted area of the shelter. Hattix claimed that when C.K.H. saw Howell, she began backing away from Howell, but Howell caught C.K.H.'s arm and pulled her forward. Howell left the restricted area with C.K.H. Hattix testified that Briggs ran toward Howell and C.K.H. and picked up C.K.H. Hattix claimed Briggs set C.K.H. down in the lobby, and all three left the shelter together.

Robert Cook, assistant director of the Chimney Rock Shelter, testified that as the three left the shelter, he spoke to Briggs.

Cook alleged he told Briggs, "You don't want to do this ... She's [C.K.H. is] under court order, in our custody right now. You can't take her out of here without the Judge releasing her." Cook claimed Briggs then told Howell to take C.K.H. and run.

After the State closed its case, appellants moved for an instructed verdict on the ground that the State failed to present sufficient evidence that they committed interference with child custody. The trial court overruled the motion.

C.K.H. testified as a witness for the defense. She stated that she had not wanted to be placed in the shelter. While she was at the shelter, C.K.H. called Howell. C.K.H. testified that after the call, Howell came to the shelter. C.K.H. claimed Howell walked to the back of the shelter and called her name. C.K.H. testified that she then ran to Howell and voluntarily walked out with her.

C.K.H. stated that when she and Howell reached the lobby of the shelter, she ran to Briggs and hugged him. C.K.H. testified that she and Howell then left the Chimney Rock Shelter without Briggs.

Howell testified that King came to her home on May 9, and asked her to sign some papers. Howell claimed that when she looked at the papers, she realized they were custody papers and refused to sign them. Howell stated that King then left, and she did not speak to King again. Howell denied King ever told her that Children's Protective Services was going to, or that it did, get a court order concerning custody of C.K.H.

On the morning of May 11, Howell and Briggs went to the Chimney Rock Shelter. Howell claimed that while Briggs was on the telephone with King, she walked through the shelter. She testified that she saw C.K.H. and called her name. Howell claimed C.K.H. ran to her and hugged her, and they walked, arm in arm, into the lobby area and proceeded out of the shelter. Howell admitted seeing Cook as they left, but denied he mentioned a court order.

◼ In their first point of error, appellants contend that the trial court erred in denying their motion for instructed verdict because the evidence was insufficient to establish they knew they were violating a court order disposing of a child's custody.

A challenge to the ruling on a motion for instructed verdict is, in actuality, a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990). Therefore, we treat appellants' first point of error as a challenge to the sufficiency of the evidence to support their convictions for interference with child custody.

In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989).

The law in effect at the time of the commission of the offense provided that a person committed the offense of interference with child custody if he took a child younger than 18 years old when he "kn[ew] that his taking ... violate[d] the express terms of a judgment or order of a court disposing of the child's custody." TEX.PENAL CODE ANN. § 25.03(a)(1).[1]

King testified that she told Howell and Briggs, on the telephone, that Children's Protective Services had temporary custody of C.K.H. Additionally, Teagle testified that she told Howell and Briggs that C.K.H. was in the Chimney Rock Shelter under court order and could not be released without another court order. Cook testified that, as Briggs and Howell left the shelter with C.K.H., Cook also told Briggs C.K.H. was in the shelter under court order, and they could not take her. In contrast, Howell denied Cook said anything about a court order as she and C.K.H. left the shelter.

The jury, as trier of fact, is the sole judge of a witness's credibility and may believe or disbelieve all or any part of a witness's testimony. *Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App.1984); *Sam v. State*, 771 S.W.2d 210, 212 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). The jury could believe the testimony of King, Teagle, and Cook; in addition, the jury could disbelieve the testimony of Howell. Therefore, viewing the evidence in the light most favorable to the verdict, the evidence is sufficient to support appellants' convictions for interference with child custody.

Appellants' reliance on *Cabrera v. State*, 647 S.W.2d 654 (Tex.Crim.App.1983), is misplaced. In *Cabrera*, the court reversed the conviction for interference with child custody because the custody order did not contain the name of the child and, thus, did not give the child's mother sufficient notice that custody had been taken away from her. *Id.* at 655. Appellants do not contend that the order did not give them notice that they no longer had custody of C.K.H.; rather, they contend that they were unaware of the existence of any order.

We overrule appellants' first point of error.

◼ In their second point of error, appellants contend that the trial court erred in failing to charge the jury, as requested by appellants, on the offense of enticing a child. Appellants contend that the offense of enticing a child was a lesser included offense of the charged offense of interference with child custody.

A charge on a lesser included offense is required if 1) proof of the lesser included offense is within proof of the offense charged, and 2) evidence in the record establishes that if the accused is guilty, he is guilty only of the lesser offense. *Kinnamon v. State*, 791 S.W.2d 84, 96 (Tex.Crim. App.1990); *Tissier v. State*, 792 S.W.2d 120, 124 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). An offense is a lesser included offense if its commission is proved by the same or less than all the facts that

---

1. Act of June 17, 1987, 70th Leg., R.S., ch. 444, § 1, 1987 Tex.Gen.Laws 2022, *amended by* Act of June 14, 1989, 71st Leg., R.S., ch. 830, § 1, 1989 Tex.Gen.Laws 3787. The 1987 language applies to this case.

prove the commission of the offense charged. TEX.CODE CRIM.P.ANN. art. 37.-09(1) (Vernon 1981).

To establish a person committed interference with child custody, the facts must show that the person took a child younger than 18 years old, when he knew his taking violated the express terms of a judgment or order of a court disposing of the child's custody. TEX.PENAL CODE ANN. § 25.03(a)(1). To establish a person committed the offense of enticing a child, the facts must show that the person, with intent to interfere with the lawful custody of a child younger than 18 years old, knowingly took the child from the custody of his guardian. TEX.PENAL CODE ANN. § 25.04(a) (Vernon 1989). An element of the offense of enticing a child is intent to interfere with the lawful custody of the child. Such an intent is not an element of the offense of interference with child custody; rather, knowledge that the express terms of a judgment or court order are being violated is an element of the offense of interference with child custody. Hence, enticing a child is not a lesser included offense of interference with child custody, and the trial court did not err in denying appellants' requested jury charge.

We overrule appellants' second point of error.

■ In their third point of error, appellants contend that the trial court erred in instructing the jury in a manner that commented on the weight of the evidence.

During jury deliberations, the jury requested TEX.FAM.CODE ANN. § 17.01 (Vernon 1986) for reference. The trial court responded, "[t]hat is not a part of this case."

Appellants contend that the trial court's instruction was a comment on the testimony of Judge Eric Andell. Judge Andell testified that a provision of chapter 17 of the Family Code provides that a parent must be given notice of a hearing concerning custody of a child. The Family Code does provide for written notice to a parent of a hearing concerning custody of a child. TEX.FAM.CODE ANN. § 17.031 (Vernon Supp.

1991). However, the jury did not ask for section 17.031.

Even if the jury had requested section 17.031, the trial court's instruction was proper. No provision of the Family Code, specifically section 17.031, was admitted into evidence. Only exhibits that have been admitted into evidence may be furnished to the jury. *Aldridge v. State*, 732 S.W.2d 395, 398 (Tex.App.—Dallas 1987, pet. ref'd); *see also* TEX.CODE CRIM.P.ANN. art. 36.25 (Vernon 1981) (any exhibits admitted as evidence shall be furnished to the jury). Since the Family Code was not admitted into evidence, the trial court properly refused to furnish it to the jury and instructed the jury that it was not part of the case. The trial court's instruction was not a comment on the weight of the evidence. The trial court did not err in instructing the jury.

We overrule appellants' third point of error.

■ In their fourth point of error, appellants contend that the trial court erred in denying their motions to quash the indictments. Specifically, appellants contend that the indictments failed to inform them what court order they were charged with violating and failed to inform them of the express terms of the court order they were charged with violating.

> The indictments charged that appellants: on or about May 11, 1989, did then and there unlawfully intentionally and knowingly take and retain C[ ] K[ ] H[ ], a child younger than eighteen years ... knowing that the taking and retention was in violation of the express terms of a judgment and order rendered on May 10, 1989, in Cause Number 68636 in the 313th Judicial District Court of Harris County, Texas, a court disposing of Complainant's [C.K.H.'s] custody.

An indictment must allege all essential elements of the charged offense. *Bynum v. State*, 767 S.W.2d 769, 778 (Tex.Crim.App.1989); *Bogany v. State*, 646 S.W.2d 534, 535 (Tex.App.—Houston [1st Dist.] 1982, no pet.). An indictment is sufficient if it charges the commission of the offense in plain and intelligible language sufficient

to enable the accused to prepare his defense. *Daniels v. State*, 754 S.W.2d 214, 217 (Tex.Crim.App.1988); TEX.CODE CRIM.P. ANN. art. 21.11 (Vernon 1989). The State is not required to plead evidentiary facts that are not essential to provide the required notice to the accused. *Daniels*, 754 S.W.2d at 218.

In the present case, the indictments charged appellants with violating a court order or judgment. While they did not set forth the express terms of the order or judgment, they did set forth the date the order or judgment was issued, the issuing court, the cause number, and the matter disposed of by the order or judgment. The indictments did inform appellants what order or judgment they were charged with violating. We find the indictments were sufficient to give appellants notice of the offense charged. The State was not required to set forth the express terms of the order or judgment appellants were charged with violating; the terms of the order or judgment were merely evidentiary.

We overrule appellants' fourth point of error.

We affirm the judgment.