NO. 07-06-0043-CR


NO. 07-06-0044-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



MARCH 8, 2006



______________________________




STEPHANIE LINDA ESPINOSA,



 Appellant


v.



THE STATE OF TEXAS,



 Appellee


_________________________________



FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;



NOS. 50,641-C & 50,642-C; HON. PATRICK A. PIRTLE, PRESIDING



_______________________________



Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

 Stephanie Linda Espinosa, appellant, attempts to appeal her convictions for
possession of a controlled substance in a drug free zone. The court imposed her sentence
in both causes in open court on December 12, 2005. Appellant then filed a notice of
appeal in both cases on January 30, 2006. We dismiss for want of jurisdiction.

 To be timely, a notice of appeal must be filed within 30 days after the sentence is
imposed or suspended in open court or within 90 days after that date if a motion for new
trial is filed. Tex. R. App. P. 26.2(a). No motion for new trial having been filed, appellant's
notice of appeal was due to be filed January 11, 2006. Because the record discloses that
appellant's notice of appeal was received by the trial court clerk on January 30, 2006, in
both cases, without seeking an extension of the deadline, Tex. R. App. P. 26.3, the notices
of appeal were late. 

 A timely filed notice of appeal is essential to invoke our appellate jurisdiction. Olivo
v. State, 918 S.W.2d 519, 522 (Tex. Crim. App. 1996). If it is untimely, we can take no
action other than to dismiss the proceeding. Id. at 523. Appellant's notices being untimely
filed, we have no jurisdiction over the matters and dismiss the appeals.

 Accordingly, appellant's appeals are dismissed. (1)


 Brian Quinn 

 Chief Justice 




Do not publish.
1. The appropriate vehicle for seeking an out-of-time appeal from a final felony conviction is by writ of
habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure. See Tex. Code Crim.
Proc. Ann. art. 11.07 (Vernon 2005).



-size: 10pt">Issue Two - Expert Testimony


 Appellant next contends that the trial court erred in admitting "expert testimony in
violation of the principals [sic] of Kelly Vs State regarding the child abuse syndrome which
commented on the outcry testimony." The expert in question was FBI Special Agent
James Clemente. Furthermore, the prosecution called him to explain why child victims,
such as A.M., do not outcry for a considerable length of time or when first interviewed by
law enforcement officers. We overrule the issue.

 While appellant describes at length in his brief what he considers to be the
applicable test by which the admissibility of Clemente's testimony must be assessed, i.e.
the standard announced in Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992) as
opposed to Nenno v. State, 970 S.W.2d 549 (Tex. Crim. App. 1998), he says next to
nothing about how the testimony fails to meet it. And, because we are left to guess at the
substance of appellant's contention, the issue has been waived due to inadequate briefing. 
See Peake v. State, 133 S.W.3d 332, 334 (Tex. App.-Amarillo 2004, no pet.) (involving
a claim of ineffective assistance of counsel and holding that it was waived because the
appellant failed to explain why the evidence to which counsel did not object was
inadmissible).

 Yet, to the extent appellant may be suggesting that the testimony was inadmissible
under the case of Perez v. State, 25 S.W.3d 830 (Tex. App.-Houston [1st Dist.] 2000, no
pet.), we find the case inapposite. Unlike the expert in Perez, Clemente proposed to testify
about theories and concepts garnered from his own observations of children who were
sexually victimized, from his own interviews with adults who sexually victimized children,
from years of data and information developed by the department in which he had worked
for some five years, and from his participation in studies with other experts in the field. He
was not attempting to proffer expert opinion based merely upon what others may have
written about the subject, unlike the witness in Perez. See Hernandez v. State, 53 S.W.3d
742, 750-51 (Tex. App.-Houston [1st Dist.] 2001, pet. ref'd) (finding Perez inapplicable
because the witness in Hernandez spoke of her own theories based upon her own
observations). 

 Finally, because the theory to be discussed was one involving a "soft science," the
standard enunciated in Nenno controlled the admission of the evidence, contrary to
appellant's suggestion. State v. Medrano, 127 S.W.3d 781, 785-87 (Tex. Crim. App.
2004). And, in applying that standard to the evidence of record, we have found sufficient
basis upon which the trial court could have held not only that the behavior of children who
were sexually victimized was a legitimate soft science, see Hernandez v. State, 53 S.W.3d
at 751 (recognizing that the behavior of sexually victimized children was a legitimate field
of expertise), but also that Clemente was qualified to testify about it given his professional
experience and observations.

Issue Three - Incorrect Name in Jury Charge


 Via his third issue, appellant complains about the addition of the suffix "Jr." to his
name in counts five through ten of the guilt/innocence jury charge. Because the
abbreviation was omitted in counts five through ten of the indictment (the first four counts
contained it), it could not be included in the charge, he continues. In adding the suffix, a
variance purportedly arose. We overrule the issue.

 Appellant concedes that the State produced evidence "against Tom Richard Doyle,
Jr., not Tom Richard Doyle." Furthermore, the appellations "Jr." and "Sr." form no part of
a person's legal name, and may be rejected as surplusage. Cherry v. State, 447 S.W.2d
154, 156 (Tex. Crim. App. 1969). Thus, because there was no need to include them in the
indictment, Smith v. State, 734 S.W.2d 694, 698-99 (Tex. App.-Houston [1st Dist.] 1987),
remanded on other grounds, Nos. 832-87 - 834-87 (Tex. Crim. App. November 16, 1988),
there arose no variance between the indictment, evidence, and jury charge. 

 Moreover, appellant nowhere claims that the circumstance misled him. That too is
fatal to his contention. Green v. State, 55 S.W.3d 633, 647 (Tex. App.-Tyler 2001, no
pet.), cert. denied, 535 U.S. 958, 122 S.Ct. 1366, 152 L.Ed.2d 360 (2002) (holding that
absent a claim of prejudice, a variance in names is not fatal). 

Issue Four - Cumulation of Sentence


 In his fourth issue, appellant argues that the trial court erred in ordering that his
sentence for count 1 (indecency with a child) run consecutively to the other sentences
levied upon him. This is so because a sentence arising from an indecency conviction
cannot be stacked upon a sentence arising from a conviction for aggravated kidnapping
(count 4). The State concedes that punishment under count 1 cannot be stacked upon
punishment for count 4. Given this, we will reform the judgment and redact all reference
to the sentence for count 1 running consecutively to that of count 4. See Yvanez v. State,
991 S.W.2d 280, 282-83 (Tex. Crim. App. 1999) (because a sentence for intoxication
manslaughter could not be ordered to run consecutively to one for intoxication assault, the
court reformed the judgment to declare that it only run consecutively to the other
intoxication manslaughter convictions); LaPorte v. State, 840 S.W.2d 412, 415 (Tex. Crim.
App. 1992) (reforming the judgment to delete the cumulation order).

Issue Five - Missing Jury Note 
 

 Appellant next argues that he is entitled to a new trial because a jury note from the
guilt/innocence phase of trial is missing. We overrule the issue for several reasons.

 First, we abated this appeal to have the trial court determine what, if any, notes were
issued by the jury and whether they were lost. The trial court subsequently convened a
hearing and received evidence on the matter. Thereafter, it issued its findings of fact. 
Nowhere in the latter did the trial court find that the jury issued the note upon which the
appellant's contention is based. Instead, it found that "[i]f a third note or any other note
exists, as referenced in the affidavit and live testimony of Janice Baldwin [appellant's trial
attorney], it can not [sic] be re-created." (2) Nor can we say that the evidence developed at
the hearing established that the jury sent a note during the guilt/innocence phase. And,
without proof that a note was actually sent, we cannot say that a new trial is required
because the note is missing. In other words, we cannot find fault in omitting from the
record something that may have never existed. 

 Second, assuming arguendo that a note existed and was lost, before that can result
in a new trial, the missing document must be necessary to the appeal's resolution. Tex.
R. App. P. 34.6(f)(3). Appellant's trial counsel stated that if she had an objection, at the
time, to the missing note or the trial court's response thereto, she would have read both
the note and response into the record. Yet, the record contains no evidence of an
objection to any note from the jury while it considered guilt or any judicial response to the
supposed note. Without the record illustrating that appellant had voiced any complaint
about either, we are unable to see how the note and response are necessary to the
appeal's resolution. Cruz v. State, 742 S.W.2d 545, 548-49 (Tex. App.-Austin 1988, no
pet.) (stating that because the appellant voiced no objection to the note, he was not
harmed by its absence from the record); see Issac v. State, 989 S.W.2d 754, 757 (Tex.
Crim. App. 1999) (stating that obtaining a new trial under Rule 34.6(f) is conditioned upon
proof of harm and that one does not suffer harm unless the missing items are necessary
to the resolution of the appeal). 

Issue Six - Punishment Hearing


 In his sixth issue, appellant claims that he is entitled to a new punishment hearing
due to the trial court's responses to several jury notes sent during the punishment stage
of the trial, the inaccuracy of one response, the failure of appellant to be present when the
responses were read, and the failure of the trial court to read its responses in open court. 
We overrule the issue.

 As to the last two contentions, both concern application of art. 36.27 of the Texas
Code of Criminal Procedure. (3) And, assuming arguendo that appellant was not present
when the trial court read its responses to the jury questions, his attorney was. 
Furthermore, nothing of record illustrates that she objected to his absence from the
courtroom at the time. Nor does it illustrate that she objected to the purported failure of the
judge to read its responses to the jury in open court. Without a timely objection to either
purported error, neither were preserved for review. Hawkins v. State, 660 S.W.2d 65, 81
(Tex. Crim. App. 1983) (holding that contentions involving noncompliance with art. 36.27
cannot be reviewed on appeal in the absence of a timely objection); see McGowan v.
State, 664 S.W.2d 355, 358 (Tex. Crim. App. 1984) (involving a trial court's responses to
jury questions and holding that the failure to specify the grounds for objection waived
error). 

 As to the propriety of the judge's responses to the inquiries, appellant asserts that
they constituted a misstatement of the law. Yet, that ground was not mentioned below.
Appellant having failed to raise this objection below, the complaint was waived. Green v.
State, 912 S.W.2d 189, 192-93 (Tex. Crim. App. 1995), cert. denied, 518 U.S. 1021, 116
S.Ct. 2556, 135 L.Ed.2d 1074 (1996) (involving a trial court's response to a jury question
and stating that Almanza was "inapplicable" in reviewing the error). 

Issue Seven - Lesser-Included Offense


 Appellant next argues that he should have received an instruction on the lesser-
included offense of enticing a child. We overrule the issue.

 To be entitled to an instruction on a lesser-included offense, it must be shown,
among other things, that the elements of the lesser offense are included within the proof
necessary to establish the greater offense. Campbell v. State, No. 081-03, 2004 Lexis
1802 at *8 (Tex. Crim. App. Oct. 27, 2004). Thus, the elements of the two crimes must be
compared. Id. at 9. And, since the two crimes involved, according to appellant, are
aggravated kidnapping and enticing a child, those are the two which we now compare.

 One commits the offense of aggravated kidnapping if he intentionally or knowingly
abducts another person with the intent to violate or abuse him sexually. Tex. Pen. Code
Ann. §20.04(a)(4) (Vernon 2003). "Abduct" means to restrain a person with intent to
prevent his liberation by secreting or holding him in a place where he is not likely to be
found or using or threatening to use deadly force. Id. §20.01(2) (Vernon Supp. 2004-2005). "Restrain" means to restrict a person's movements without consent so as to
substantially interfere with the person's liberty by moving the person from one place to
another or by confining him by 1) force, intimidation, or deception, or 2) any means,
including acquiescence of the victim if the victim is less than 14 years of age and the
parent has not acquiesced in the movement or confinement. Id. §20.01(1). 

 Next, the offense of enticing a child occurs if, with the intent to interfere with the
lawful custody of a child younger than 18, one knowingly entices, persuades, or takes the
child from the custody of the parent. Tex. Pen. Code Ann. §25.04(a) (Vernon 2003). As
can be seen, this crime requires proof of an intent to interfere with the lawful custody of the
child. Briggs v. State, 807 S.W.2d 648, 652 (Tex. App.-Houston [1st Dist.] 1991, pet. ref'd). 
Such is not required to establish aggravated kidnapping, however. Given that the elements
of the supposedly lesser offense are not included within the proof necessary to secure a
conviction for the greater, the crime of enticing a child is not a lesser-included offense of
aggravated kidnapping. And, the trial court did not err in refusing to hold otherwise. 

Issue Eight - Admission of Arrest Warrant


 In his eighth issue, appellant argues the trial court erred in admitting into evidence
two federal arrest warrants and then excluding evidence as to the dismissal of any federal
kidnapping charge. We overrule the point.

 As to the admission of the warrant (there was actually only one), testimony
regarding its procurement and execution was solicited and admitted before the prosecutor
attempted to physically tender the document into evidence. More importantly, appellant
uttered no objections to those questions and answers. Because of that, admission of the
warrant itself was and is not reversible error. Leday v. State, 983 S.W.2d 713, 718 (Tex.
Crim. App. 1998) (stating that the improper admission of evidence does not constitute
reversible error if the same facts were shown by other evidence which went unchallenged).

 As to the evidence regarding the dismissal of any federal kidnapping prosecution,
appellant argues that it was admissible under the theory of optional completeness. Yet,
that basis for admitting the evidence went unsaid below. So, the latter does not comport
with the objection or ground now being urged, and because it does not, appellant failed to
preserve it for review. See Gutierrez v. State, 85 S.W.3d 446, 454 (Tex. App.-Austin
2000, pet. ref'd) (holding that error was waived when the defendant urged on appeal an
objection to an evidentiary ruling different from that mentioned at trial). 

Issue Nine - Legal and Factual Sufficiency


 In his last issue, appellant contends that the evidence is legally and factually
insufficient to support his conviction for aggravated kidnapping. This is purportedly so
because the evidence illustrated that he voluntarily released his child victim in a safe place. 
We overrule the issue.

 The offense of aggravated kidnapping is a first degree felony. Yet, if in the
punishment stage of the trial the defendant illustrates, by a preponderance of the evidence,
that he voluntarily released the victim in a safe place, the gravity of the offense is reduced
to that of a felony of the second degree. Tex. Pen. Code Ann. §20.04(d) (Vernon 2003). 
In assessing whether the accused released his victim in a safe place, indicia such as 1) the
remoteness of the location, 2) the proximity of authorities or persons who could help, 3) the
time of day, 4) climatic conditions, 5) the condition of the victim, 6) the character of the
location or surrounding neighborhood, and 7) the victim's familiarity with the location or
surrounding neighborhood merit consideration. Nolan v. State, 102 S.W.3d 231, 238 (Tex.
App.-Houston [14th Dist.] 2003, pet. ref'd). 

 Moreover, because §20.04(d) of the Penal Code saddles the defendant with the
burden of proof at trial, he may prevail on his claim of legal insufficiency only by
establishing, as a matter of law, that his victim was released in a safe place. Id. Whether
this was done requires us to first examine the record for evidence supporting the jury's
verdict and ignoring that which may contradict it. Id. If no such evidence appears, then
and only then do we search for evidence purporting to establish that the victim was
voluntarily released in a safe place. Id. However, in assessing appellant's claim of factual
sufficiency, we peruse the entire record and then decide whether the verdict was so
against the great weight and preponderance of the evidence as to be manifestly unjust. 
Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Nolan v. State, 102 S.W.3d 
at 238-39. 

 The record contains evidence illustrating that A.M. was 11 years old at the time. 
And, though appellant released him, he did so at 2 a.m. on a December morning down the
street from the house wherein the victim's friend lived. The child walked alone to his
friend's house, though appellant testified that he watched the boy approach and knock on
the door. However, it is undisputed that appellant did not wait to see who, if anyone,
answered the door or if the child actually entered the house. Instead, he left the scene. 
Furthermore, he opted not to personally deliver the boy to the door and wait for someone
to appear because he "didn't really plan on waking them [i.e. those at the house] up and
having them yell at me and say, 'We told you not to be seeing [the child].'" That appellant
was hesitant to wake the residents up implies not only that they were asleep but also that
they did not expect the child's arrival at that time. 

 Whether the neighborhood was safe was a topic that went undeveloped. That it
may have been "very nice" and an "expensive place to live" does not necessarily assure
its security. Absent evidence that crime occurs only in poor neighborhoods or that the
criminal or dangerous element of our society eschews "nice neighborhoods" (two
propositions which we are not prepared to accept), one would be hard pressed to
reasonably infer from appellant's comments that the neighborhood in which the child found
himself alone at 2 a.m. was safe. And, while the youth may have stayed the night at his
friend's house on other occasions does not necessarily mean that he was familiar with the
neighborhood or those who may be traversing it at 2 a.m.

 Given the child's age, time of night, the unexpected nature of his arrival at his
friend's house, appellant's failure to either walk him to the door or await his entry into the
abode, and the dearth of evidence regarding the safety of A.M. and his familiarity with the
neighborhood, we cannot say that appellant established, as a matter of law, that the child
was released in a safe place. Thus, his claim of legal insufficiency lacks foundation. Nor,
after reviewing the entire record, do we find the jury's refusal to hold that appellant
released the child in a safe place to be so against the great weight and preponderance of
the evidence as to be manifestly unjust. Thus, the claim of factual insufficiency lacks merit
as well.

 Accordingly, we modify the trial court's judgment and order that the sentences levied
against appellant upon counts two through ten run concurrently with each other and that
the sentence for count one run consecutively with those for counts three, five, six, seven,
eight, nine, and ten. As modified, the judgment is affirmed. 

 

 Brian Quinn 

 Justice

Do not publish.


 
1. Appellant has had two different appellate counsel each of whom filed a brief on his behalf. The first
three issues were presented by his first counsel while the last six were presented by his second. 
2. Baldwin's testimony at the hearing was equivocal. There she said that "if I remember that there was
anything at all, that there's a strong possibility that there was something." 
3. Article 36.27 of the code describes the procedure for handling communications between the jury and
the trial court. Tex. Code Crim. Proc. Ann. art. 36.27 (Vernon 1981).